UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALLSTATE INSURANCE COMPANY, *et al.*,

                Plaintiffs,

        -against-

CREDIT SUISSE SECURITIES (USA) LLC, *et al.*,

                Defendants.

1:11-cv-02232-NRB

---

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO REMAND TO STATE COURT BASED ON LACK OF SUBJECT-MATTER JURISDICTION OR, IN THE ALTERNATIVE, PRINCIPLES OF ABSTENTION**

QUINN EMANUEL URQUHART &
SULLIVAN, LLP
Daniel L. Brockett
Steig D. Olson
David D. Burnett
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
Telephone:  (212) 849-7000
Fax:  (212) 849-7100
danbrockett@quinnemanuel.com
steigolson@quinnemanuel.com
daveburnett@quinnemanuel.com

Richard A. Schirtzer
D. M. Rawlings
Matthew Scheck
865 South Figueroa Street, 10th Floor
Los Angeles, California, 90017
Telephone:  (213) 443-3000
Fax:  (213) 443-3100
richardschirtzer@quinnemanuel.com
chiprawlings@quinnemanuel.com
matthewscheck@quinnemanuel.com

*Attorneys for Plaintiffs*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................1

BACKGROUND ....................................................................................................3

ARGUMENT .........................................................................................................6

I.      DEFENDANTS BEAR THE BURDEN OF DEMONSTRATING THAT
        REMOVAL IS PROPER ............................................................................6

II.     ALLSTATE'S ACTION IS NOT "RELATED TO" ANY BANKRUPTCY ...................6

        A.      The Relevant Legal Standard................................................6

        B.      Defendants' Cursory Removal Notice Does Not Satisfy Their Burden .................7

        C.      Allstate's Action Cannot Have the Requisite Effect on Any Bankruptcy ..............9

                1.      BNC Mortgage LLC ("BNC")...................................................10

                2.      New Century TRS Holdings ("New Century") .........................11

                3.      Taylor, Bean & Whitaker ("TBW")........................................14

                4.      Any prospect of a *de minimis* recovery is insufficient.............................15

III.    THIS COURT IS REQUIRED TO ABSTAIN FROM EXERCISING ANY
        "RELATED TO" JURISDICTION DEFENDANTS CLAIM EXISTS...........................17

        A.      The First Five Prerequisites Are Easily Satisfied .................................18

        B.      The Sixth Requirement Is Met Because This Action Can Be "Timely
                Adjudicated" in State Court ................................................19

IV.     THE COURT SHOULD REMAND THIS CASE UNDER THE PERMISSIVE
        ABSTENTION PROVISIONS OF 28 U.S.C. §§ 1334(c)(1) AND 1452(b) ...................22

CONCLUSION...................................................................................................25

## **TABLE OF AUTHORITIES**

**Page**

### **Cases**

*In re 19 Court St. Assocs., LLC,*
  190 B.R. 983 (Bankr. S.D.N.Y. 1996) .................................................................7

*Alicea v. Circuit City Stores, Inc.,*
  534 F. Supp. 2d 432 (S.D.N.Y. 2008) ...............................................................25

*In re Amanat,*
  338 B.R. 574 (S.D.N.Y. 2005) ...........................................................................20

*Andrews v. Modell,*
  636 F. Supp. 2d 213 (S.D.N.Y. 2008) ..................................................................6

*In re Asbestos Litig.,*
  No. CV 01-1790-PA, 2002 WL 649400 (D. Or. Feb. 1, 2002) ............................8

*In re Casual Male Corp.,*
  317 B.R. 472 (Bankr. S.D.N.Y. 2004) ...............................................................22

*Celotex Corp. v. Edwards,*
  514 U.S. 300 (1995) ..............................................................................................7

*Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.,*
  337 B.R. 22 (S.D.N.Y. 2005) .............................................................................18

*Charles Schwab Corp. v. BNP Paribas Secs.,*
  No. C 10-04030 SI, 2011 WL 724696 (N.D. Cal. Feb. 22, 2011) ......................17

*In re Cody, Inc.,*
  281 B.R. 182 (S.D.N.Y. 2002) ...........................................................................23

*Deep v. Boies,*
  No. 1:05-CV-1187 (FJS/RFT), 2007 WL 169940 (N.D.N.Y. Jan. 17, 2007) .......20

*Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.,*
  130 B.R. 405 (S.D.N.Y. 1991) ...........................................................................19

*In re Extended Stay Inc.,*
  435 B.R. 139 (S.D.N.Y. 2010) .......................................................................18, 20

*Fed. Home Loan Bank of Chicago v. Banc of Am. Funding Corp.,*
  No. 10 C 7560, 2011 WL 151842 (N.D. Ill. Jan. 18, 2011) .........................14, 16

*Fed. Home Loan Bank of San Francisco v. Deutsche Bank Secs., Inc.,*
  Nos. 10-3039 SC, 10-3045 SC, 2010 WL 5394742 (N.D. Cal. Dec. 20, 2010) .....22

*Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.,*
  No. C10-0139 RSM, 2010 WL 3662345 (W.D. Wash. Sept. 1, 2010) ................22

ii

*In re Federal-Mogul Global, Inc.*,
  300 F.3d 368 (3d Cir. 2002)..................................................................................7

*G&H Partners AG v. Wextrust Capital, LLC*,
  No. 07 Civ. 9803 (DLC), 2008 WL 65102 (S.D.N.Y. Jan. 4, 2008) .....................25

*Gen. Elec. Capital Corp. v. Por-Fac Coop., Inc.*,
  No. 01 CIV 10215 LTS JCF, 2002 WL 1300054 (S.D.N.Y. June 11, 2002) ..........9

*In re Gen. Media, Inc.*,
  335 B.R. 66 (Bankr. S.D.N.Y. 2005) ....................................................................13

*In re Holland Indus., Inc.*,
  103 B.R. 461 (Bankr. S.D.N.Y. 1989) ...............................................................7, 17

*In re Houbigant, Inc.*,
  188 B.R. 347 (Bankr. S.D.N.Y. 1995) ..................................................................10

*In re Kassover*,
  336 B.R. 74 (Bankr. S.D.N.Y. 2006) ....................................................................13

*In re Keene Corp.*,
  188 B.R. 903 (S.D.N.Y. 1995)..............................................................................10

*Lifetime Brands Inc. v. ARC Int'l., SA*,
  No. 09 CIV 9792 (LAK), 2010 WL 454680 (S.D.N.Y. Jan. 29, 2010)............18, 20

*MBIA Ins. Co. v. Indymac ABS, Inc.*,
  No. 09-CV-07737 SJO (PJWx) (C.D. Cal. Dec. 23, 2009)  ..................................16

*In re Manville Forest Prods. Corp.*,
  209 F.3d 125 (2d Cir. 2000)..................................................................................10

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*,
  488 F.3d 112 (2d Cir. 2007)................................................................................6, 7

*In re Midgard Corp.*,
  204 B.R. 764 (B.A.P. 10th Cir. 1997) ...................................................................21

*In re New 118th LLC*,
  396 B.R. 885 (Bankr. S.D.N.Y. 2008)...............................................................18, 21

*In re Olympia & York Maiden Lane Co. LLC*,
  Nos. 98 B 46167 JLG, 98 B 46168 JLG, 98/9155A,
  1999 WL 58581 (Bankr. S.D.N.Y. Jan. 25, 1999)..................................................21

*Pacor, Inc. v. Higgins*,
  743 F.2d 984 (3d Cir. 1984), *overruled on other grounds by*
  *Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995).........................6, 7, 8, 9

*Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*,
  Nos. 09-4302-cv (L), 09-4306-cv (con), 09-4373-cv (con),
  --- F.3d ----, 2011 WL 1365008 (2d Cir. Apr. 12, 2011)............................6, 18, 19, 20, 21, 22

*Polanco v. 21 Arden Realty Corp.*,
   121 B.R. 425 (S.D.N.Y. 1990) ........................................................................................25

*In re RJZM LLC*,
   No. 06-11535 (ALG), 2009 WL 2929433 (Bankr. S.D.N.Y. July 28, 2009) ....................20

*Stratford Med. Ctr. v. Miller*,
   No. 10 C 7844, 2011 WL 1114258 (N.D. Ill. Mar. 24, 2011) ........................................25

*Steel Workers Pension Trust v. Citigroup, Inc.*,
   295 B.R. 747 (E.D. Pa. 2003) ....................................................................................8, 9

*In re Taub*,
   417 B.R. 186, 192-93 (E.D.N.Y. 2009) ..........................................................................23

*In re Victory Mkts., Inc.*,
   263 B.R. 9 (N.D.N.Y. 2000) ............................................................................................7

*Villano ex rel. Villano v. Kohl's Dep't Stores, Inc.*,
   362 F. Supp. 2d 418 (S.D.N.Y. 2005) ..............................................................................6

*In re W.R. Grace & Co.*,
   591 F.3d 164 (3d Cir. 2009) *cert. denied*, 131 S. Ct. 200 (2010) ..................................9

*Wells Fargo Bank, N.A. v. Flash Vos, Inc.*,
   No. 05-2660, 2006 WL 6503036 (E.D. La. June 28, 2006)........................................22, 23

## <u>Statutes</u>

28 U.S.C. § 1334 ..............................................................................................................23

28 U.S.C. § 1334(b) .......................................................................................................1, 6

28 U.S.C. § 1334(c) ..........................................................................................................23

28 U.S.C. § 1334(c)(1)...................................................................................................2, 22

28 U.S.C. § 1334(c)(2)............................................................................2, 17, 18, 19, 20

28 U.S.C. § 1447 ..............................................................................................................18

28 U.S.C. § 1447(c) ..........................................................................................................25

28 U.S.C. § 1452(a) ............................................................................................................6

28 U.S.C. § 1452(b) ......................................................................................................2, 22

By this motion to remand, Plaintiffs ("Allstate") seek to have this action—alleging purely state-law claims—returned to New York Supreme Court.

## PRELIMINARY STATEMENT

This action arises from Defendants' fraudulent sale to Allstate of residential mortgage-backed securities ("RMBS" or the "Certificates").  Allstate's Complaint alleges that Defendants, all Credit Suisse-related entities, defrauded Allstate by issuing offering materials that misrepresented the Certificates' quality.  Allstate was led to believe that it was buying highly rated, safe securities backed by pools of loans with specifically represented risk profiles. Defendants knew, however, that the pools included a toxic mix of loans that did not comply with promised underwriting standards.  Allstate invested more than $231 million in nine Credit Suisse RMBS offerings, but now has lost millions of dollars as the Certificates' value has plummeted.

Defendants removed this action on March 31, 2011, solely pursuant to the "related to" bankruptcy provisions of 28 U.S.C. § 1334(b).  No Defendant is in bankruptcy.  Rather, Defendants claim that this action is related to bankruptcies of three entities that originated mortgage loans underlying the securities—even though these entities originated but a small portion of the loans securitized in the offerings at issue.  Defendants conclusively claim this action "relates to" the bankruptcies because some of the Defendants may have indemnification rights against the bankrupt lenders should Allstate prevail here.

Defendants' attempt to remove this action is utterly without basis.  Remand should be ordered on any one of three independent grounds.

*First*, Defendants fail to demonstrate that "related to" jurisdiction exists.  Their vague description in the removal notice of hypothetical and contingent claims against the originators is facially insufficient.  More significantly, an examination of the bankruptcy proceedings shows that Defendants long ago lost or relinquished any chance to pursue significant indemnification

claims from the bankrupt estates.  Defendants fail to mention that, in one bankruptcy, they did not even bother to assert an indemnification claim before being barred from doing so, and in another they long ago settled any such claim.  And in the last proceeding, Defendants could, at most, hope for a *de minimis* distribution that would have no appreciable effect on the estate's liabilities—and it is far from clear Defendants could even get that.  Indeed, for multiple reasons, this action cannot impact any of the bankruptcy estates.  *See* Section II *infra*.

**Second**, even assuming this action could be "related to" the bankruptcy proceedings of the three originators, the *mandatory* abstention provisions of 28 U.S.C. § 1334(c)(2) require remand.  This section provides that non-core cases (which this case indisputably is) arising out of state law (which this case does) that can be timely adjudicated in state court (which this case can) "shall be" remanded to state court.  *Id.*  There can be no doubt that this action can be timely adjudicated in the Commercial Division of the New York State Supreme Court—a court which is capably handling numerous common-law fraud and negligent misrepresentation claims arising from RMBS offerings.  *See* Section III *infra*.

**Third**, at a minimum, this court should exercise its discretion to abstain and remand under 28 U.S.C. §§ 1334(c)(1) and 1452(b).  The interests of justice and comity weigh firmly in favor of permissive abstention and remand to state court here.  *See* Section IV *infra*.

Allstate, therefore, respectfully requests that the action be remanded to New York State Supreme Court.

## BACKGROUND

On February 28, 2011, Allstate filed its Complaint in the Supreme Court of the State of New York, New York County.[1]  The Complaint alleges that Defendants engaged in common-law fraud and negligent misrepresentation by knowingly making false statements in Offering Materials written and disseminated for the purpose of selling RMBS in nine separate public offerings from 2005 to 2007.  (Compl. ¶¶ 2-3.)  Each Defendant is part of the same Credit Suisse corporate family, and each either issued or underwrote the securities or acquired mortgage loans and sponsored the securitizations.  (*Id.* ¶¶ 10-15.)

The Complaint alleges that the Offering Materials contained false statements and material omissions concerning the quality of the underwriting of the mortgage loans underlying the Certificates.  (*Id.* ¶¶ 54-61.)  The Complaint alleges, for example, that Defendants commissioned and received due diligence on the loan pools during the securitization process from third-party due diligence firms, and, despite being notified that a substantial percentage of the loans in the pool were defective, nevertheless waived the defects.  (*Id.* ¶¶ 62-65, 121-134.)

Relying on Defendants' misrepresentations, Allstate purchased more than $231 million in securities from Defendants.  (*Id.* ¶ 3.)  But because the underlying mortgage loans were not as represented, all but one of the Certificates now carry non-investment grade ratings.  (*Id.* ¶ 95.) Allstate has incurred substantial losses because the securities it purchased cannot be marketed at any price near the purchase price.  (*Id.* ¶¶ 189-196.)

The total number of mortgage loans underlying the securities issued in the nine offerings is 42,428 with an aggregate principal balance, according to the Prospectus Supplements, in

---

[1]  *See* Complaint (or "Compl.") (Dkt. No. 1, Ex. A).

excess of $7.2 billion dollars.[2]  The Prospectus Supplements identify thirteen originators that

originated, to varying degrees, the loans in the loan pools securitized as part of the offerings from

which Allstate purchased its securities:

1. DLJ Mortgage Capital, Inc.
2. Credit Suisse Financial Corp.
3. Option One Mortgage Corp.
4. Countrywide Home Loans, Inc.
5. Suntrust Mortgage, Inc.
6. Banco Popular de Puerto Rico
7. UBS Real Estate Securities
8. R&G Mortgage Corp.
9. New Century Mortgage Corp.
10. Finance America LLC
11. CIT Consumer Finance
12. Quicken Loans, Inc.
13. Taylor, Bean & Whitaker Mortgage Corp.[3]

On March 31, 2011, Defendants filed a notice of removal ("Notice") in this Court.  (*See*

Dkt. No. 1.)  The Notice asserts that this action is "related to" the bankruptcy proceedings of

three non-party originators—BNC Mortgage LLC ("BNC"),[4] New Century Mortgage

Corporation ("New Century"), and Taylor, Bean & Whitaker Mortgage Corporation ("TBW")—

because "in the event a loss is sustained by Defendants in connection with this action,"

Defendants may have rights to seek indemnification and/or contribution for "actual or alleged

material misstatements or omissions made" by the originators.  (*Id.* ¶¶ 12, 17-18.)

---

[2]  *See* ARMT 2005-6A Pro. Supp. at S-5; ARMT 2007-1 Pro. Supp. at S-10; CSMC 2006-8 Pro. Supp. at S-5; CSMC 2007-3 Pro. Supp. at S-7; CSMC 2007-5 Pro. Supp. at S-6; HEMT 2005-5 Pro. Supp. at S-20; HEMT 2006-2 Pro. Supp. at S-4-5; TBW 2006-4 Pro. Supp. at S-5; ABSC 2006-HE5 Pro. Supp. at 35.  Relevant excerpts from the Prospectus Supplements for each offering are attached to the Declaration of Steig D. Olson in Support of Plaintiffs' Motion to Remand to State Court (the "Olson Decl.") as Exhibits A-I.

[3] *See* Olson Decl., Exs. A-I.

[4] The Notice asserts that Finance America, LLC originated mortgage loans and "merged into its affiliate, BNC Mortgage, Inc.," which later became BNC Mortgage LLC.  (Notice ¶ 14.)

The Notice does not, however, attach any indemnification agreements or otherwise demonstrate their scope.  Nor does the Notice provide any information about what has transpired to date in these bankruptcy proceedings to substantiate Defendants' assertion that this case will impact the bankruptcy estates; it does not even state, for example, that any Defendant filed a proof of claim in any of the three proceedings to assert purported indemnification rights.

The three originators that are the subject of the Notice originated loans that became collateral for just three of the nine securitizations:  CSMC 2007-5, HEMT 2005-5, and TBW 2006-4.[5]  Finance America originated 19.27% of the loans in HEMT 2005-5, or *1.1%* of the total value of the 42,428 loans underlying the securitizations at issue in Plaintiffs' action, as measured by principal balance on the cut-off date.  New Century originated or acquired approximately 3.7% of the loans in CSMC 2007-5, or *0.5%* of the total value of the loans underlying the nine securitizations.[6]  Finally, the loans originated by TBW represent 4.1% of all loans originated, or *5.8%* of the value of those loans.  In total, the three originators thus are responsible for only about *7.4%* of the total value of the loans in the securitizations at issue.

The status of the bankruptcy proceedings involving these entities is discussed below.  *See* Section II.C *infra*.  It turns out that, in the BNC bankruptcy, no Defendant filed a claim asserting any indemnification rights, and all Defendants are long since barred from doing so.  In the New Century bankruptcy, while certain Defendants did file proofs of claims, they proceeded to settle and release any indemnification rights.  And in the TBW bankruptcy, it does not appear that any

---

[5]  *See* Olson Decl. Ex. E at S-5, Ex. F at S-4, Ex. H at S-5.

[6]  It is unclear in the Prospectus Supplement for CSMC 2007-5 whether the percentage of loans New Century originated in loan group 1 is based on number of loans or aggregate principal balance.  The 3.7% figure stated above is based on aggregate principal balance.  If the percentage were to be based on number of loans, the percentage of loans originated by New Century would be 2.9% of the loans in CSMC 2007-5 and *0.4%* of the loans in all the securitizations.

Defendant filed an indemnification claim; in any event, it is clear that such a claim would, at most, have a negligible impact on the debtor's liabilities.

**ARGUMENT**

I.    **DEFENDANTS BEAR THE BURDEN OF DEMONSTRATING THAT REMOVAL IS PROPER**

Defendants must demonstrate that removal is proper.  *See, e.g.*, *Andrews v. Modell*, 636 F. Supp. 2d 213, 219 (S.D.N.Y. 2008).  "Removal jurisdiction is strictly construed inasmuch as it implicates significant federalism concerns and abridges the deference courts generally give to a plaintiff's choice of forum."  *Villano ex rel. Villano v. Kohl's Dep't Stores, Inc.*, 362 F. Supp. 2d 418, 419 (S.D.N.Y. 2005).  Indeed, "out of respect for the limited jurisdiction of the federal courts and the rights of states, [courts] must resolve any doubts against removability."  *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks omitted).

II.   **ALLSTATE'S ACTION IS NOT "RELATED TO" ANY BANKRUPTCY**

Defendants wrongly rely on "related to" jurisdiction, under 28 U.S.C. §§ 1334(b) and 1452(a) as the basis for removing this case.  In fact, this action is not related to any of the three bankruptcy proceedings.

A.    **The Relevant Legal Standard**

A non-core proceeding, such as this one, is "related to" a bankruptcy case if its "outcome might have any 'conceivable effect' on the bankrupt estate."  *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, Nos. 09-4302-cv (L), 09-4306-cv (con), 09-4373-cv (con), --- F.3d ----, 2011 WL 1365008, at *3 (2d Cir. Apr. 12, 2011) (quoting *In re Cuyahoga Equip. Corp.*, 980 F.2d 110, 114 (2d Cir. 1992)); *see also Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir. 1984) (test "is whether the outcome of [the civil proceeding] could conceivably have any effect on the estate

being administered in bankruptcy") (emphasis omitted), *overruled on other grounds by Things Remembered, Inc. v. Petrarca*, 516 U.S. 124 (1995).

While this test appears to be facially broad, the Supreme Court has made clear that "'related to' jurisdiction cannot be limitless." *Celotex Corp. v. Edwards*, 514 U.S. 300, 308 (1995). This is particularly the case where, as here, non-debtor third parties are involved. "Because an endless array of cases would 'relate to' any single bankruptcy administration, the Second Circuit has limited 'related to' jurisdiction to '***significant***' relation, and ***not simply a remote connection***." *In re Victory Mkts., Inc.,* 263 B.R. 9, 15 (N.D.N.Y. 2000) (emphasis added); *see also In re 19 Court St. Assocs., LLC*, 190 B.R. 983, 996 (Bankr. S.D.N.Y. 1996) (there must be "a direct and significant connection between the contract and the debtor's estate"); *In re Holland Indus., Inc.*, 103 B.R. 461, 468 (Bankr. S.D.N.Y. 1989) ("[R]elatedness does not lie where the dispute, while 'conceivably' related to the bankruptcy estate, is so only remotely.").

To demonstrate a "conceivable effect" on the bankruptcy estate, the removing party must show that the outcome of the dispute "could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and . . . in any way impact[] upon the handling and administration of the bankrupt estate." *Pacor*, 743 F.2d at 994. In other words, the test requires that the civil dispute create "the logical possibility that the estate will be affected." *In re Federal-Mogul Global, Inc.*, 300 F.3d 368, 375 (3d Cir. 2002) (internal quotation marks omitted).

### B. Defendants' Cursory Removal Notice Does Not Satisfy Their Burden

Defendants' Notice does not satisfy their burden of demonstrating that this action will conceivably affect the three bankruptcy estates. The Notice fails at many levels and falls far short of "resolv[ing] any doubts against removability." *In re MTBE*, 488 F.3d at 124.

*First*, the purported indemnification rights advanced as the sole basis for jurisdiction are described in conclusory and hypothetical terms.  The Notice asserts that "certain of the Defendants have claims for indemnification and/or contribution" against the originators (Notice ¶ 17), but identify no source or provision with specificity.  Defendants fail to cite to (or attach) the agreements that purportedly give them these indemnification rights.  Nor do Defendants identify any "misstatements or omissions" in the disclosures made by the bankrupt entities sufficient to give rise to any indemnification obligation.  (*Id.*)

Defendants also fail to demonstrate any ability or even intent to pursue indemnification in any of the bankruptcies.[7]  *See, e.g., Steel Workers Pension Trust v. Citigroup, Inc.*, 295 B.R. 747, 750 (E.D. Pa. 2003) ("Mere **potential** impact upon the debtor's estate is insufficient.") (emphasis added).  These failures require remand.  *See In re Asbestos Litig.*, No. CV 01-1790-PA, 2002 WL 649400, at *4 (D. Or. Feb. 1, 2002) (no related-to jurisdiction based on "hypothetical indemnity and contribution claims" asserted with "almost no factual support").

*Second*, Defendants fail to establish that this action automatically triggers any indemnification liabilities, as opposed to being "a mere *precursor* to [a] potential third party claim for indemnification."  *Pacor*, 743 F.2d at 995 (emphasis added).  The Notice facially indicates that Defendants' rights would only arise from a future action depending on a series of contingencies.  (*See* Notice ¶¶ 17-18) ("the Bankrupt Originators would owe certain of the Defendants indemnity and/or contribution obligations that **could affect** the debtors' property **in the event** a loss is sustained by Defendants" **if** that loss related to misstatements by the originators "**regarding the mortgage loans underlying the Certificates**") (emphasis added).

---

[7]   Indeed, as discussed below, the Notice omits information that demonstrates that such claims cannot be pursued in certain, if not all, of the bankruptcies.  *See* Section II.C *infra*.

Such contingencies show that any connection between this case and any bankruptcy is tenuous.  If, for example, liability were to arise here from offerings in which the originators played no part, Defendants would have no indemnification rights.  Moreover, Allstate could prove liability in a variety of ways without proving that any **debtor** made a misstatement.  The Complaint alleges, for example, that Defendants failed to disclose that they waived numerous loans into collateral pools after learning from due-diligence firms that the loans were substandard.  (Compl. ¶¶ 121-134.)  To the extent these, or other similar, misrepresentations prove to be the basis for liability, Defendants would apparently not have any indemnification rights.  Courts have denied "related to" jurisdiction where purported indemnification rights were similarly attenuated.  *See Pacor,* 743 F.2d at 995.[8]

### C.   **Allstate's Action Cannot Have the Requisite Effect on Any Bankruptcy**

Despite bearing the burden of proof, Defendants also say virtually nothing about what has transpired in the bankruptcy cases that they seek to use as a hook for federal jurisdiction.  Plaintiffs' own examination of those proceedings reveals that, notwithstanding any theoretical indemnification rights Defendants may have had, this case cannot conceivably impact the bankruptcy estates.

---

[8]   The Third Circuit recently reaffirmed that contingent indemnification claims are not a valid basis for "related to" jurisdiction.  *See In re W.R. Grace & Co.,* 591 F.3d 164, 173 (3d Cir. 2009) *cert. denied,* 131 S. Ct. 200 (2010).  *See also Steel Workers,* 295 B.R. at 750 (in holding that an underwriters' indemnification agreement with debtor did not bring action within "related to" jurisdiction, the court stated, "[t]he necessity of future action to fix the debtor's liability after resolution of the pending lawsuit precludes the exercise of 'related to' jurisdiction"); *Gen. Elec. Capital Corp. v. Por-Fac Coop., Inc.,* No. 01 CIV 10215 LTS JCF, 2002 WL 1300054, at *2 (S.D.N.Y. June 11, 2002) ("Resolution of the rights of Plaintiff and Defendants *inter se* does not require resolution of the validity or proper scope of any [indemnification] claims by Defendants against Debtor, and will have no direct effect on the bankruptcy estate.").

1.      **BNC Mortgage LLC ("BNC")**

The first bankruptcy case upon which Defendants rely—*In re BNC Mortgage LLC*, No. 09-10137 (Bankr. S.D.N.Y. Jan. 9, 2009) (Notice ¶ 15)—is a Chapter 11 reorganization case that is being jointly administered with *In re Lehman Bros. Holdings Inc. et al.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y. Sept. 15, 2008).  An examination of this proceeding reveals that Defendants are barred from pursuing any indemnification claims against the bankrupt estate.

A review of the claims register through the website of the claims agent appointed in the case indicates that ***Defendants never filed any proofs of claim*** in the case.  And the bar date has passed,[9] foreclosing Defendants from now filing a claim with respect to any pre-petition indemnification rights.[10]  *See In re Keene Corp.*, 188 B.R. 903, 907 (S.D.N.Y. 1995) (claims bar date "must be strictly observed").  The BNC Bar Date Order specifically provides that "any holder of a claim against the Debtors who is required, but fails to file a proof of such claim in accordance with the Bar Date Order on or before the Bar Date [September 22, 2009] . . . ***shall be forever barred, estopped and enjoined from asserting such claim against the Debtors (or filing a Proof of Claim with respect thereto)*** . . . ."  BNC Bar Date Order at 9-10 (emphasis added).

---

[9] *See* Order Pursuant to Section 502(b)(9) of the Bankruptcy Code and Bankruptcy Rule 3003(c)(3) Establishing the Deadline for Filing Proofs of Claim, Approving the Form and Manner of Notice Thereof and Approving the Proof of Claim Form, *In re Lehman Bros. Holdings Inc., et al.*, No. 08-13555 (JMP) (Bankr. S.D.N.Y.  July 2, 2009), ECF No. 4271 (the "BNC Bar Date Order") (establishing September 22, 2009 as the bar date).  The BNC Bar Date Order is attached to the Olson Declaration as Exhibit J.

[10]   Defendants' purported rights are "pre-petition" because any indemnification or contribution obligation was created before the bankruptcy petition was filed.  *See In re Houbigant, Inc.*, 188 B.R. 347, 358-59 (Bankr. S.D.N.Y. 1995) ("[A] contractual indemnification claim exists as a contingent claim against the indemnitor as of the date the indemnification agreement is executed."); *see also In re Manville Forest Prods. Corp.*, 209 F.3d 125, 129 (2d Cir. 2000) (post-petition contingency does not "transmogrify the claim into a post-petition claim").  Defendants assert that Finance America originated loans for a 2005 transaction—years before BNC Mortgage's bankruptcy petition.

This applies to Defendants.  Thus, any theoretical indemnification or contribution claims Defendants ever had are now ***non-existent*** for purposes of BNC's bankruptcy case.  Allstate's action cannot impact the bankrupt estate on this ground alone.

In addition, Debtors filed a plan and disclosure statement in BNC's bankruptcy case, estimating that unsecured creditors will recover ***$0*** on account of claims made.[11]  Thus, the realities of BNC's assets and liabilities are such that, even if a Defendant had filed a timely proof of claim, Defendants could not recover a single cent from the bankrupt estate.  This is another reason why Allstate's action cannot affect the BNC estate.

### 2.      New Century TRS Holdings ("New Century")

The second bankruptcy case upon which Defendants rely—*In re New Century TRS Holdings Inc.*, No. 07-10416 (KJC) (Bankr. D. Del. Apr. 2, 2007) (Notice ¶15)—also cannot support removal jurisdiction.  In this case it appears that certain Defendants did file proofs of claim against New Century potentially relating to indemnification and contribution obligations; but those Defendants—Credit Suisse First Boston Mortgage Capital LLC ("CSFB") and DLJ Mortgage Capital, Inc. ("DLJ")—***settled and resolved those claims*** long ago.

Pursuant to a stipulation with the Debtors and the Official Committee of Unsecured Creditors, CSFB settled proofs of claim that it asserted against New Century relating to an Amended and Restated Master Repurchase Agreement dated January 31, 2007 (the "MRA").[12]

---

[11]   *See* Debtors' Disclosure Statement for Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and its Affiliated Debtors Pursuant to Section 1125 of the Bankruptcy Code, Ex. 4, *In re Lehman Bros. Holdings Inc.*, 08-13555 (JMP) (Bankr. S.D.N.Y. Apr. 14, 2010), ECF No. 8332 (the "Disclosure Statement").  A copy of Exhibit 4 to the Disclosure Statement is attached as Exhibit K to the Olson Declaration.  The liquidation analysis set forth in the Disclosure Statement also shows ***no recovery*** on account of unsecured claims.  *Id*., Ex. 5.

[12]   *See* Stipulation Among Credit Suisse First Boston Mortgage Capital LLC, DLJ Mortgage Capital, Inc., Official Committee of Unsecured Creditors and Debtors Fixing and Allowing Certain Claims, *In re New Century TRS Holdings Inc.*, No. 07-10416 (KJC) (Bankr. D.

These claims (the "CSFB MRA Claims") included both liquidated claims and unliquidated damages related to the MRA.  July Stipulation at 3.  Pursuant to the July Stipulation, "each CSFB MRA Claim [was] amended and allowed as a general unsecured claim in the amount of $103,532,223.00 against the Debtor against which it was filed . . . ."  *Id.* ¶ 2.

Thus, any claims under the MRA were fixed in July of *2008*.  Indeed, CSFB expressly agreed to "*waive its right (if any) to indemnification* from the Debtors as asserted in the CSFB MRA Claims."  *Id*. ¶ 3 (emphasis added).  CSFB also agreed, except as otherwise set forth in the stipulation, the Plan, and certain other global settlement agreements, "*to completely release and forever discharge the Debtors* . . . *from any and all claims*, rights, demands, actions, liabilities, obligations, causes of action of any and all kinds, nature and character whatsoever, known or unknown . . . arising under or concerning the MRA."  *Id.* ¶ 6 (emphasis added).

The July Stipulation also discusses a proof of claim filed by DLJ against New Century (Proof of Claim No. 3585) for "unliquidated and undetermined amounts" in addition to liquidated amounts pursuant to Seller's Purchase, Warranties and Interim Servicing Agreement dated July 1, 2005 between DLJ and New Century (as defined in the July Stipulation, the "EPD/Breach Claim").  *Id.* ¶ H.  That claim, however, was also *settled* by a subsequent stipulation between the New Century Liquidating Trust and DLJ, which set forth a "*full resolution* of the EPD/Breach Claim."[13]

_____

Del. July 31, 2008), ECF No. 8688, Ex. 1 (the "July Stipulation").  The July Stipulation is attached to the Olson Declaration as Exhibit L.

[13] *See* Stipulation Between New Century Liquidating Trust and DLJ Mortgage Capital, Inc. Fixing and Allowing EPD/Breach Claims of DLJ Mortgage Capital Inc., *In re New Century TRS Holdings Inc.*, No. 07-10416 (KJC) (Bankr. D. Del. May 6, 2009), ECF No. 9632, Ex. A (the "DLJ Stipulation") (emphasis added) (Olson Decl. Ex. M).  The DLJ Stipulation was approved by order of the court on May 12, 2009.  *See* Order Approving Stipulation Between the New Century Liquidating Trust and DLJ Mortgage Capital, Inc. Fixing and Allowing

Therefore, both Defendants that filed potentially relevant claims against New Century **settled those claims in full resolution thereof** more than two years ago, and it appears that no Defendant filed any other relevant proofs of claim prior to the August 31, 2007 bar date.[14]  Thus, there is no way Allstate's case can affect the New Century bankrupt estate.

In addition, New Century's bankruptcy case is in the post-confirmation stage, where "related to" jurisdiction is much narrower.[15]  *See In re Gen. Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005) ("All courts that have addressed the question have ruled that once confirmation occurs, the bankruptcy court's jurisdiction shrinks.").  Because confirmation ends the estate, "the outcome of a post-confirmation proceeding cannot affect the estate."  *Id.* at 74.  Thus, where a plan has been confirmed, the removed proceeding must have a "close nexus" to the confirmed plan, such that the action "affects the interpretation, implementation, consummation, execution or administration of the confirmed plan" and the plan "provide[s] for the retention of jurisdiction over the dispute."  *See In re Kassover*, 336 B.R. 74, 79 (Bankr. S.D.N.Y. 2006).

Because the plan in New Century was confirmed well over a year ago, and assets are being administered and distributed under the plan, Defendants could not meet the "close nexus" standard for post-confirmation jurisdiction.  This is another reason why the New Century bankrupt estate cannot be affected by Allstate's case.

---

EPD/Breach Claims of DLJ Mortgage Capital, Inc., *In re New Century TRS Holdings Inc.*, No. 07-10416 (KJC) (Bankr. D. Del. May 12, 2009), ECF No. 9635 (Olson Decl. Ex. N).

[14] Order Establishing Bar Dates for Filing Proofs of Claim and Approving Form, Manner and Sufficiency of Notice Thereof, *In re New Century TRS Holdings Inc.*, No. 07-10416 (KJC) (Bankr. D. Del. June 28, 2007), ECF No. 1721 (the "New Century Bar Date Order").  The New Century Bar Date Order is attached to the Olson Declaration as Exhibit O.

[15] *See* Order Confirming the Modified Second Amended Joint Chapter 11 Plan of Liquidation Dated as of September 30, 2009, *In re New Century TRS Holdings Inc.*, No. 07-10416 (KJC) (Bankr. D. Del. Nov. 20, 2009), ECF No. 9957 (the "Modified Plan").  The Modified Plan is attached to the Olson Declaration as Exhibit P.

### 3.    Taylor, Bean & Whitaker ("TBW")

The final bankruptcy case upon which Defendants rely—*In re Taylor, Bean & Whitaker Mortgage Corp.*, No. 09-07047-JAF (Bankr. M.D. Fla. Aug. 24, 2009) (Notice ¶ 16)—also cannot confer "related to" jurisdiction.  As an initial matter, as discussed further below, the fact that there is no relationship between the first two bankruptcy cases (BNC Mortgage LLC and New Century) and Allstate's action should be dispositive; removing Allstate's action on the basis of potential contingent indemnification claims against one bankrupt originator of just 4% of the loans underlying this action would be the quintessential example of  "a very small jurisdictional tail [wagging] the very large jurisdictional dog of this lawsuit as a whole."  *Fed. Home Loan Bank of Chicago v. Banc of Am. Funding Corp.*, No. 10 C 7560, 2011 WL 151842, at *1 (N.D. Ill. Jan. 18, 2011).

Moreover, the facts of the TBW bankruptcy show that Allstate's lawsuit could not have any appreciable effect on the bankrupt estate.  Pursuant to the TBW Liquidating Plan, the estimated value of assets available for distribution to general unsecured creditors is between $264,003,406 and $353,960,151.[16]  But the estimated amount of general unsecured claims is over *$8 billion*, leaving the estimated recoveries for general unsecured claims to range from *3.3* cents on the dollar to *4.4* cents on the dollar.  Olson Decl. Ex. Q.

Thus, recovery on any claim by Defendants will necessarily have a negligible effect on the debtor's liabilities.  *If,* for example, Allstate were to prevail against Defendants and be awarded, for argument's sake, $231 million (the total amount of loans Allstate purchased) and *if* TBW were to be held responsible (through indemnification) for *all* of the damages relating to the

---

[16] *See* Second Amended and Restated Disclosure Statement, *In re Taylor, Bean & Whitaker Mortg. Corp.*, No. 09-07047-JAF (Bankr. M.D. Fla. Nov. 12, 2010), ECF No. 2144, Ex. C.  A copy of Exhibit C to the Second Amended and Restated Disclosure Statement is attached to the Olson Declaration as Exhibit Q.

value of the loans it originated (about 4%), the amount of unsecured claims against the estate would climb approximately 0.11%.  In other words, assuming that Defendants (i) filed timely indemnification or contribution claims against TBW; (ii) are found liable for the full amount of the loans purchased by Allstate; and (iii) can show that the losses are fully covered under whatever rights they have, then TBW's general unsecured claims pool would increase by *approximately one-tenth of 1%.*  As discussed further below, such a negligible impact on the size of a creditor pool is insufficient to confer "related to" jurisdiction.

Moreover, it is not clear that any Defendant filed a proof of claim against TBW that expressly asserts any indemnification or contribution obligations.  A review of the claims agent's case site indicates that the only possibly relevant proof of claim is DLJ's Proof of Claim 2576, as a general unsecured claim.[17]  In the attachment to the proof of claim, DLJ asserts that the claim's basis is TBW's alleged "pre-petition failure to meet its obligations under the parties' Mortgage Loan Agreement," and specifically that "TBW breached Section 3.2(ee) of the Agreement regarding the limitation that no portion of the Mortgage Property can be used for commercial purposes."  *See* Olson, Decl. Ex. R.  Plaintiffs have seen no evidence that DLJ (or any other Defendant) specifically asserted a claim for TBW's indemnification or contribution liabilities.

Thus, again for multiple reasons, the TBW bankruptcy cannot support "related to" jurisdiction.

### 4.    Any prospect of a *de minimis* recovery is insufficient

As shown above, it appears that the most any Defendant could hope for in any of the bankruptcies is potentially a pennies-on-the-dollar distribution in the TBW bankruptcy that will

---

[17]   The DLJ Claim is attached to the Olson Declaration as Exhibit R.

15

have no appreciable effect on TBW's liabilities—and it is questionable Defendants can even hope for that. This is plainly insufficient to support removal of this action.

Courts find "related to" jurisdiction lacking when the case in question could at most result in a minimal shuffling of distributions among creditors. *See, e.g., MBIA Ins. Co. v. Indymac ABS, Inc.*, No. 09-CV-07737 SJO (PJWx) (C.D. Cal. Dec. 23, 2009) ("*MBIA Order*") (denying "related to" jurisdiction in part because "the purported claims would only affect relative rights of creditors" in a Chapter 7 liquidation) (citation omitted).[18]

Courts also deny jurisdiction where the connection between a debtor and the case as a whole is minor. For instance, the defendants in *Federal Home Loan Bank of Chicago v. Banc of America Funding Corp.*, 2011 WL 151842, at *1, argued for removal based on the bankruptcies of four originators who were responsible for originating loans related to eight of the thirty-four mortgage-backed securities plaintiff purchased.[19] In remanding the action, the court held:

> [T]he prospect that a *few* of the defendants may have such a potential basis for invoking federal jurisdiction *in a couple* of the situations targeted by [the complaint] ***cannot serve as a very small jurisdictional tail that can wag the very large jurisdictional dog of this lawsuit as a whole***.

*Id.* at *3 (emphasis added).

---

[18]   The *MBIA Order* is attached to the Olson Declaration as Exhibit S. The *MBIA* court declined to find "related to" jurisdiction despite ties between the RMBS issuer and bankruptcy proceedings far more pronounced than the originator-indemnification rights claimed here. The defendants there sought removal based on the bankruptcy of their corporate parent holding company and that of a co-underwriter. Notice of Removal at 5-6, 8, *MBIA Ins. Co. v. Indymac ABS, Inc.*, No. 09-CV-07737 SJO (PJWx) (C.D. Cal. Oct. 23, 2009), ECF No. 1 (Olson Decl. Ex. T). The court nonetheless concluded that any effect on the bankruptcy proceedings was "speculative," "attenuated," and "hypothetical" in light of the defendants' failure to identify any potential effect on the bankruptcy estates and the fact that only "certain Defendants" were alleged to have the right to seek indemnification from the Lehman Brothers estate. *See MBIA Order* at 2 (Olson Decl. Ex. S).

[19]   For a recital of the relevant facts, not set forth in the decision, *see* Mot. to Remand at 19, 21, *Fed. Home Loan Bank of Chicago*, No. 10 C 7560 (N.D. Ill. Dec. 17, 2010), ECF No. 148 (Olson Decl. Ex. U).

Likewise, in *Charles Schwab Corp. v. BNP Paribas Secs.*, No. C 10-04030 SI, 2011 WL 724696 (N.D. Cal. Feb. 22, 2011), the court chastised defendants for relying on the bankruptcy of a single originator (AHM) to establish "related to" jurisdiction over an RMBS case given AHM's small origination role in the numerous trusts at issue:

> [Defendant] Wells Fargo provides no explanation of how its claims regarding the 262 loans in the Wells Fargo Mortgage Backed Securities Trust 2007-8 will be treated under the AHM liquidation plan or what further proceedings, if any, Wells Fargo can foresee with respect to its rights asserted in the AHM bankruptcy. Wells Fargo also fails to explain either how its rights with respect to 262 loans, only 5.5% of the loans in one of the three Wells Fargo trusts, would lead to a significant amount of indemnity for the claims in this action, or, relatedly, whether other indemnity agreements cover other loans in its trusts.

*Id.* at *2.[20]

Here too, the fact that Defendants might, at most, get a *de minimis* recovery from the bankruptcy of one originator that contributed mortgages to just one of nine offerings is insufficient to bring this case into federal court. *See In re Holland Indus.*, 103 B.R. at 468 ("[R]elatedness does not lie where the dispute, while 'conceivably' related to the bankruptcy estate, is so only remotely. *Turner* requires the litigation to have a 'significant connection with bankruptcy.'") (citing *Turner v. Erminger* (*In re Turner*), 724 F.2d 338, 341 (2d Cir. 1983)). Remand is thus warranted.

## III.   THIS COURT IS REQUIRED TO ABSTAIN FROM EXERCISING ANY "RELATED TO" JURISDICTION DEFENDANTS CLAIM EXISTS

Even if this Court determines that there is federal "related to" jurisdiction over Allstate's action, 28 U.S.C. § 1334(c)(2) requires that this Court abstain and remand this case to state court. This section provides:

---

[20]   The *Schwab* court ultimately remanded on permissive abstention grounds, while expressing serious doubts about the existence of "related to" jurisdiction. *See id.* at *2-4. Abstention would be appropriate here as well. *See* Sections III & IV *infra*.

> Upon timely motion of a party in a proceeding based upon a State law claim or State law cause of action, related to a case under title 11 but not arising under title 11 or arising in a case under title 11, with respect to which an action could not have been commenced in a court of the United States absent jurisdiction under this section, the district court ***shall abstain*** from hearing such proceeding if an action is commenced, and can be timely adjudicated, in a State forum of appropriate jurisdiction.

28 U.S.C. § 1334(c)(2) (emphasis added).

In other words, abstention is *required* where, as here:

(1)     the motion to abstain was timely;
(2)     the action is based on state law claims;
(3)     the action does not "arise in" a bankruptcy case or "arise under" title 11;
(4)     section 1334 provides the sole basis for federal jurisdiction;
(5)     the action was commenced in state court; and
(6)     that action can be "timely adjudicated" in state court.

*See, e.g.*, *Parmalat*, 2011 WL 1365008, at *4; *In re New 118th LLC*, 396 B.R. 885, 892 (Bankr. S.D.N.Y. 2008); *Certain Underwriters at Lloyd's, London v. ABB Lummus Global, Inc.*, 337 B.R. 22, 26 n.1 (S.D.N.Y. 2005).

Cases routinely find mandatory abstention appropriate, even when a suit is—for reasons absent here—found to be "related to" non-party bankruptcy proceedings.  *See, e.g.*, *In re Extended Stay Inc.*, 435 B.R. 139, 152 (S.D.N.Y. 2010); *Lifetime Brands Inc. v. ARC Int'l, SA*, No. 09-cv-9792(LAK), 2010 WL 454680, at *2-3 (S.D.N.Y. Jan. 29, 2010); *In re New 118th*, 396 B.R. at 892-95.

As each of the statutory requirements for mandatory abstention is satisfied here, this case must be remanded.

### A.     The First Five Prerequisites Are Easily Satisfied

***First***, this motion is timely.  *See generally* 28 U.S.C. § 1447 (general rule providing for thirty days for non-jurisdictional remand motions).

***Second***, this action is based entirely on state law claims of common law fraud and negligent misrepresentation.  (Compl. ¶¶ 197-221.)

18

*Third*, this action neither "arises in" a bankruptcy case nor "arises under" the bankruptcy laws governing the proceedings of the various non-party lenders.  "Actions that 'arise under' title 11 involve claims predicated on a right created by a provision of title 11 . . . ."  *Drexel Burnham Lambert Grp., Inc. v. Vigilant Ins. Co.*, 130 B.R. 405, 407 (S.D.N.Y. 1991) (citations and quotations omitted).  "'Arising in' proceedings are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy."  *Id.* (citations and quotations omitted).  The claims of fraud and negligent misrepresentation at issue here are not predicated on any right created by a provision of the bankruptcy laws and would exist outside of the identified bankruptcy proceedings.

*Fourth*, Section 1334 provides the only possible basis for federal jurisdiction, as Defendants themselves concede.  (*See* Notice ¶ 9.)

*Fifth*, this case was originally filed in New York state court.

**B.   The Sixth Requirement Is Met Because This Action Can Be "Timely Adjudicated" in State Court**

The sixth and final prerequisite for mandatory abstention under § 1334(c)(2) is that the state-law action "can be timely adjudicated, in a State forum of appropriate jurisdiction."  28 U.S.C. § 1334(c)(2).  In *Parmalat*, the Second Circuit identified four factors to consider in determining whether timely adjudication is possible:

(1)  the backlog of the state court's calendar relative to the federal court's calendar;
(2)  the complexity of the issues presented and the respective expertise of each forum;
(3)  the status of the title 11 bankruptcy proceeding to which the state law claims are related; and
(4)  whether the state court proceeding would prolong the administration or liquidation of the estate.

*Parmalat*, 2011 WL 1365008, at *5.  Consideration of these factors shows that timely adjudication is possible.[21]

**First**, there is no backlog in the state court's calendar that would prevent a timely adjudication of this action.  Under "principles of comity," federal courts "presume that a state court will operate efficiently and effectively," *id.* at *6, and have repeatedly found that New York courts face no impediment to handling state law claims in a timely fashion.[22]

**Second**, neither the complexity of this case nor the relative expertise of this Court and the New York State Supreme Court weigh against abstention.  If remanded, this action will be assigned to the Commercial Division, which specializes in commercial cases such as this one and routinely hears RMBS fraud cases.[23]  No special factual expertise regarding Plaintiffs'

---

[21]  While a party seeking relief "[t]ypically . . . bears the burden to show he is entitled to that relief," *Parmalat* declined to impose that burden on the party requesting abstention and instead remanded for the district court to consider the question in the first instance, noting that "[p]lacing the burden on the party seeking remand may . . . be inconsistent with the mandatory nature of abstention under § 1334(c)(2) as well as the principles of comity, which presume that a state court will operate efficiently and effectively." *Parmalat*, 2011 WL 1365008, at *6.  While Defendants should bear the burden for these reasons, abstention is warranted here no matter where the burden rests.

[22]  *See In re Extended Stay*, 435 B.R. at 152 (finding that the state court could timely adjudicate the action); *Lifetime Brands*, 2010 WL 454680, at *1 (finding arguments that Commercial Division of the New York Supreme Court could not handle case expeditiously "not persuasive"); *In re RJZM LLC*, No. 06-11535 (ALG), 2009 WL 2929433, at *5 (Bankr. S.D.N.Y. July 28, 2009) ("[N]o reason to believe that the action will not be timely adjudicated in [New York] State court"); *Deep v. Boies*, No. 1:05-CV-1187 (FJS/RFT), 2007 WL 169940, at *3 (N.D.N.Y. Jan. 17, 2007) (citing evidence of the "New York State Supreme Court's pattern of timely adjudication"); *In re Amanat*, 338 B.R. 574, 582 (S.D.N.Y. 2005) ("[N]o sufficient showing that the State Court action cannot move as quickly as necessary," where the case would likely be assigned to the Commercial Division, which moves on a fast-track basis).

[23]  *See, e.g.*, *Ambac Assurance Corp. v. Credit Suisse Secs.*, No. 600070/2010 (Sup. Ct. N.Y. County Jan. 12, 2010); *MBIA Ins. Co. v. Credit Suisse Secs. (USA) LLC*, No. 603751/2009 (Sup. Ct. N.Y. County Dec. 14, 2009); *Syncora Guar. Inc., v. Countrywide Home Loans, Inc.*, No. 650042/2009 (Sup. Ct. N.Y. County Jan. 28, 2009); *MBIA Ins. Co., LLC v. Residential Funding Co., LLC*, No. 603552/08 (Sup. Ct. N.Y. County Dec. 4, 2008); *MBIA Ins. Corp. v. Countrywide Home Loans, Inc.*, No. 602825/2008 (Sup. Ct. N.Y. County Sept. 30, 2008).

allegations will be lost if the case is remanded, given that this case is in its earliest stage.  *See In re New 118th LLC*, 396 B.R. at 895 (in abstaining, noting that federal court was not up "learning curve" as it had not made substantive decisions regarding the action).

**Third**, the status of the bankruptcy proceedings to which this action is purportedly "related" supports mandatory abstention.  Two of the three cases involve liquidations (New Century and TBW), one of which has long been in the post-confirmation stage.  Liquidations present less reason for urgency in adjudication because they do not require as many rapid decisions to determine what resources are available to fund the reorganization.  *See Parmalat*, 2011 WL 1365008, at *5; *see also In re New 118th LLC*, 396 B.R. at 894 (noting that in a Chapter 7 proceeding "[t]here is no administrative urgency or plan of reorganization to facilitate" and "timely adjudication can be weighed relatively lightly") (citations and quotations omitted).[24] In addition, given the inability of any of the bankrupt estates to pay more than a negligible fraction of allowed claims, this action cannot measurably affect those proceedings.

**Fourth**, and relatedly, abstention would not prolong the administration or liquidation of the bankruptcy estates.  The operative question is whether the ***decision to abstain itself*** would "unduly prolong" the estate in a unique way that would be avoided by retention.  *See Parmalat*, 2011 WL 1365008, at *5.  Abstention can "unduly prolong" a bankruptcy where, for instance,

---

[24] The fact that a plan has been confirmed in one of the Chapter 11 liquidations (New Century) and another (TBW) is on the verge of confirmation is further evidence that state courts can "timely" adjudicate this matter.  *See In re Midgard Corp.*, 204 B.R. 764, 779 (B.A.P. 10th Cir. 1997) (finding that action could be timely adjudicated in state court; "timely adjudication may be of little significance in a Chapter 11 case with a confirmed plan of reorganization if implementation of the plan is not centered around the resolution of the state court proceeding"); *In re Olympia & York Maiden Lane Co. LLC*, Nos. 98 B 46167 JLG, 98 B 46168 JLG, 98/9155A, 1999 WL 58581, at *7 (Bankr. S.D.N.Y. Jan. 25, 1999) (finding "timely adjudication" because after confirmation the debtor's estate cannot be impacted by the state law action and "[a]n action that has no impact on these estates cannot impede our ability to efficiently administer them regardless of the length of time it takes to resolve in a state court").

the federal court to which the action has been removed is itself charged with administering the estate, such that abstention and remand risk creating duplicative proceedings.  *Id.* at \*5-6 (citing *In re WorldCom, Inc. Secs. Lit.*, 293 B.R. 308 (S.D.N.Y. 2003)).  Here, this Court is neither handling the bankruptcies, nor has it yet developed any special expertise that would be lost in the event of a remand.

Abstention and remand are thus mandatory.

## IV.   THE COURT SHOULD REMAND THIS CASE UNDER THE PERMISSIVE ABSTENTION PROVISIONS OF 28 U.S.C. §§ 1334(c)(1) AND 1452(b)

Finally, even if the Court finds that abstention is not mandatory, the interests of justice and comity nevertheless strongly favor that the Court exercise its discretion to abstain and to remand the case.  Section 1334(c)(1) provides that:

> [N]othing in this section prevents a district court in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a particular proceeding arising under title 11 or arising in or related to a case under title 11.

28 U.S.C. § 1334(c)(1); *see also* 28 U.S.C. § 1452(b) (authorizing remand on "any equitable ground").

Permissive abstention is a matter within the sound discretion of the district court.  *In re Casual Male Corp.*, 317 B.R. 472, 477 (Bankr. S.D.N.Y. 2004).  Courts routinely remand on permissive abstention grounds in RMBS cases, even where "related to" jurisdiction exists.  *See, e.g., Fed. Home Loan Bank of San Francisco v. Deutsche Bank Secs., Inc.*, Nos. 10-3039 SC, 10-3045 SC, 2010 WL 5394742, at \*4, 11-12 (N.D. Cal. Dec. 20, 2010) (abstaining despite defendants' arguments that they had potential indemnification rights from mortgage lenders; noting small number of loans originated by bankrupt entities and finding connection "remote"); *Fed. Home Loan Bank of Seattle v. Barclays Capital, Inc.*, No. C10-0139 RSM, 2010 WL 3662345, at \*7 (W.D. Wash. Sept. 1, 2010) (abstaining on equitable grounds); *see also Wells*

*Fargo Bank, N.A. v. Flash Vos, Inc.*, No. 05-2660, 2006 WL 6503036, at *3-4 (E.D. La. June 28, 2006) (same).

"In determining whether to exercise permissive abstention under § 1334(c) courts have considered **one or more** (not necessarily all) of twelve factors":

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention, (2) the extent to which state law issues predominate over bankruptcy issues, (3) the difficulty or unsettled nature of the applicable state law, (4) the presence of a related proceeding commenced in state court or other non-bankruptcy court, (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334, (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case, (7) the substance rather than form of an asserted "core" proceeding, (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court, (9) the burden of [the court's] docket, (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties, (11) the existence of a right to a jury trial, and (12) the presence in the proceeding of non-debtor parties.

*In re Cody, Inc.*, 281 B.R. 182, 190-91 (S.D.N.Y. 2002).  Consideration of these factors demonstrates that permissive abstention would also be warranted here.

*First*, for the reasons discussed above, abstention will not affect the efficient administration of any bankruptcy estate.  In addition, this matter can be timely adjudicated in state court, further tipping this factor in favor of remand.  *See* Section III.B *supra*; *see also In re Taub*, 417 B.R. 186, 192-93 (E.D.N.Y. 2009) (noting "prompt" and "expeditious" nature of proceedings in state court and finding that "efficient administration" factor weighed in favor of abstention).

*Second*, state law issues constitute the *only* legal issues in controversy in this action.

*Third*, the state law at issue is neither difficult nor unsettled, and remand is appropriate to allow the state courts to apply state fraud and negligent misrepresentation law.

*Fourth*, there is no related proceeding in state court, rendering this factor neutral.

*Fifth*, there is no basis for federal jurisdiction aside from 28 U.S.C. § 1334.

*Sixth*, as explained above, the degree of relatedness to any bankruptcy proceeding is negligible.

*Seventh*, Defendants concede the Complaint states no "core" claims.  (Notice ¶ 20.)

*Eighth*, the state law claims asserted in Plaintiffs' Complaint are wholly severable from the purportedly related bankruptcy proceedings.  There is no reason why adjudication and judgment of those claims should not be left to the state courts; nor is there any reason why the federal courts could not then adjudicate any indemnification claim that might arise.

*Ninth*, the burdens on the state and federal court would be comparable and, thus, this factor is neutral.

*Tenth*, given the remote connection between the instant action and the identified bankruptcies, and the fact that there is no other possible basis for federal jurisdiction, there is a high likelihood that Defendants engaged in forum shopping when seeking to remove this action.

*Eleventh*, Plaintiffs' right to a jury trial can be vindicated equally in federal and state court, rendering this factor neutral.

*Finally*, none of the parties in this action are in bankruptcy.

In short, the relevant factors overwhelmingly favor permissive abstention.  In simplest terms, this is a state law action with, at most, a remote link to any bankruptcy proceeding.  There is no compelling reason why this Court should find itself to be a superior forum to the state court.  The interests of justice and comity thus favor adjudication of the state law claims in the courts of the State of New York, and abstention is wholly appropriate.

## CONCLUSION

For the reasons set forth above, Allstate respectfully request that the Court remand this action to the Supreme Court of the State of New York.  Allstate further requests, pursuant to 28 U.S.C. § 1447(c), that this Court order Defendants to pay all costs and expenses, including without limitation attorneys' fees, incurred as a result of the removal.[25]

---

[25]   Such an award is appropriate where the removing party lacked an "objectively reasonable basis for seeking removal."  *G&H Partners AG v. Wextrust Capital, LLC*, No. 07 Civ. 9803 (DLC), 2008 WL 65102, at *2 (S.D.N.Y. Jan. 4, 2008) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005)).  Defendants lacked such a basis here.  *See, e.g., Polanco v. 21 Arden Realty Corp.*, 121 B.R. 425, 427-28 (S.D.N.Y. 1990) (awarding fees after noting that the action against a non-debtor "could have no effect whatsoever on the (now dismissed) bankruptcy proceeding"); *Stratford Med. Ctr. v. Miller*, No. 10 C 7844, 2011 WL 1114258, at *2 (N.D. Ill. Mar. 24, 2011) (awarding fees after rejecting defendant's argument that "related to" jurisdiction existed because if it was held liable it would seek equitable relief from debtor's bankruptcy estate); *see also Alicea v. Circuit City Stores, Inc.*, 534 F. Supp. 2d 432, 436 (S.D.N.Y. 2008) (awarding fees because removal was not objectively reasonable; "if [defendant] had conducted a reasonable investigation of the facts, it would have been apparent, under well-settled law," that the case was not removable).

DATED:    New York, New York
               May 2, 2011

Respectfully submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP


By:  /s/ Daniel L. Brockett

Daniel L. Brockett
Steig D. Olson
David D. Burnett
51 Madison Avenue, 22nd Floor
New York, New York  10010-1601
Telephone:  (212) 849-7000
Fax:  (212) 849-7100
danbrockett@quinnemanuel.com
steigolson@quinnemanuel.com
daveburnett@quinnemanuel.com

*Of Counsel: (pro hac vice applications
forthcoming where applicable)*

Richard A. Schirtzer
D.M. Rawlings
Matthew Scheck
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017
Telephone:  (213) 443-3000
Fax:  (213) 443-3100
richardschirtzer@quinnemanuel.com
chiprawlings@quinnemanuel.com
matthewscheck@quinnemanuel.com

*Attorneys for Plaintiffs Allstate Insurance
Company, Allstate Life Insurance
Company, Allstate Bank, and Kennett
Capital, Inc.*