UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------X
ALLSTATE INSURANCE COMPANY, ALLSTATE LIFE
INSURANCE COMPANY, ALLSTATE BANK (f/k/a
ALLSTATE FEDERAL SAVINGS BANK), and
KENNETT CAPITAL, INC.,

                    Plaintiffs,

      - against -

CREDIT SUISSE SECURITIES (USA) LLC,
CREDIT SUISSE FIRST BOSTON MORTGAGE
SECURITIES CORP., ASSET BACKED SECURITIES
CORPORATION, and DLJ MORTGAGE CAPITAL,
INC.,

                  Defendants.
----------------------------------------X

**MEMORANDUM AND ORDER**

11 Civ. 2232 (NRB)

**NAOMI REICE BUCHWALD**
**UNITED STATES DISTRICT JUDGE**

     Plaintiffs brought this action in the New York State Supreme Court of New York County on February 28, 2011, alleging state common law claims of fraud and negligent misrepresentation. Defendants removed the action to this Court on March 31, 2011, pursuant to 28 U.S.C. §§ 1334(b), 1441, 1446, and 1452(a). On May 2, 2011, plaintiffs moved to remand the case back to state court, or alternatively for the Court to abstain from exercising jurisdiction pursuant to 28 U.S.C. §§ 1334(c)(1)-(2) and 1452(b), and for costs and expenses incurred as a result of the removal pursuant to 28 U.S.C. § 1447(c).

For the reasons stated below, plaintiffs' motion to remand is granted and request for costs and expenses is denied.

## BACKGROUND[1]

Plaintiff Allstate Insurance Company is a company formed under the laws of Illinois, with its principal place of business in Northbrook, Illinois, and licensed to do business in New York. Plaintiff Allstate Life Insurance Company is also an Illinois corporation, while plaintiff Allstate Bank is a federally chartered thrift institution registered in Illinois. Plaintiff Kennett Capital is a Delaware corporation. All plaintiffs are subsidiaries of The Allstate Corporation.

Defendants, all part of the Credit Suisse corporate family and formed in Delaware with their principal places of business in New York, sponsored, sold, underwrote, or issued residential mortgage-backed securities (the "Certificates") purchased by plaintiffs. Defendant DLJ Mortgage Capital, Inc. acted as sponsor or seller for all of the relevant offerings of the Certificates. Defendant Credit Suisse Securities (USA) LLC, or its predecessor Credit Suisse First Boston LLC, acted as underwriter for the Certificates, while defendants Credit Suisse First Boston Mortgage Securities Corp. and Asset Backed

---

[1] The background is drawn from the Complaint, the Notice of Remand, Plaintiffs' Memorandum of Law in Support of Motion to Remand to State Court and exhibits thereto, Defendants' Memorandum of Law in Opposition and exhibits thereto, and Plaintiffs' Reply Memorandum of Law and exhibits thereto.

Securities Corporation were the registrants for certain registration statements filed with the SEC and issued certain of the Certificates. Together, defendants purchased mortgage loans from third-party originators, transferred them to trusts, and then issued the Certificates, which represented interests in the mortgage loans held by the trusts.

The Certificates were grouped in tranches according to the level of risk associated with the underlying mortgage loans. Investors must rely on the issuers' registration statements, prospectuses and supplements, terms sheets, and other written materials (the "Offering Materials") to learn about such risk; issuers, in turn, rely on the loan files developed by originators, which files are unavailable to investors. Defendants sold the Certificates to various investors -- including plaintiffs, who purchased over $231 million worth of the Certificates, which were typically rated AAA/Aaa or AA/Aa.

Plaintiffs allege that defendants' failure to disclose that the loans underlying the Certificates constituted "a toxic mix" and were "highly likely to default" caused a "drastic drop in the value of the Certificates," leading to significant losses for plaintiffs. (Compl. at ¶¶ 1, 5.) The complaint includes claims for common law fraud, fraudulent inducement, and negligent misrepresentation, based on the allegation that defendants knew or should have known that they were making

3

materially false or misleading statements or omissions in connection with the Certificates.

On March 31, 2011, defendants removed the action to this Court, asserting that the Court has "related to" jurisdiction under 28 U.S.C. § 1334(b) because defendants may have indemnification or contribution claims against three originators who are currently in bankruptcy proceedings: Finance America, LLC ("Finance America"),[2] New Century Mortgage Corporation ("New Century"), and Taylor, Bean & Whitaker Mortgage Corporation ("TBW") (collectively, the "Bankrupt Originators"). The Bankrupt Originators were responsible for approximately 7.4% of the total value of the loans in the securitizations at issue; the remainder was contributed by a number of other originators not named in the Notice of Removal. Defendants assert that, based on written agreements between them, "the Bankrupt Originators would owe certain of the defendants indemnity and/or contribution obligations that could affect the debtors' property in the event a loss is sustained by Defendants in connection with this action with respect to the Certificates." (Notice of Removal ¶ 18.)

BNC Mortgage LLC ("BNC"), the ultimate successor to Finance America, filed a petition in this district for Chapter 11 reorganization on January 9, 2009. Defendants have filed no

---

[2] Finance America was the originator of certain mortgages underlying the Certificates. It merged with BNC Mortgage, Inc., and the entity later converted to a limited liability company, which is now in bankruptcy.

proofs of claim in that proceeding, and the bar date for claim filing was September 22, 2009.

New Century instituted its Chapter 11 reorganization on April 2, 2007 in the District of Delaware. The bar date for any proofs of claim in that proceeding was August 31, 2007, and, prior to that date, defendants did file certain claims, which have since been settled. New Century's liquidation plan was confirmed on November 20, 2009, and the proceeding is currently in the post-confirmation stage.

TBW filed for reorganization under Chapter 11 in the Middle District of Florida on August 24, 2009. Defendants filed a proof of claim in that proceeding on June 11, 2010, four days before the bar date. That claim was based on the agreement pursuant to which defendants purchased mortgage loans from TBW, though the claim did not assert indemnification rights.

## DISCUSSION

### I.  Legal Standard

Any civil action brought in state court may be removed to the federal district court that embraces the state court only if the federal courts have original jurisdiction over the matter. See 28 U.S.C. § 1441(a). When challenged, the party seeking removal bears the burden of establishing this jurisdiction. See In re Refco, Inc. Sec. Litig., 628 F. Supp. 2d 432, 437 (S.D.N.Y. 2008) (citing In re WorldCom, Inc. Sec. Litig., 293

B.R. 308, 316 (S.D.N.Y. 2003)). On a motion for remand, we "must construe all disputed questions of fact and controlling substantive law in favor of the plaintiff," In re NASDAQ Mkt. Makers Antitrust Litig., 929 F. Supp. 174, 178 (S.D.N.Y. 1996), and, "out of respect for the limited jurisdiction of the federal courts and the rights of states, we must resolve any doubts against removability." California v. Atl. Richfield Co. (In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.), 488 F.3d 112, 124 (2d Cir. 2007) (internal quotation marks and alterations omitted).

## II.  Bankruptcy Jurisdiction Under 28 U.S.C. § 1334(b)

### A.  The Contours of "Related To" Jurisdiction

District courts "have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). Litigation is "related to" a bankruptcy proceeding "if the action's 'outcome might have any conceivable effect on the bankrupt estate.'" Parmalat Capital Fin. Ltd. v. Bank of Am. Corp., 639 F.3d 572, 579 (2d Cir. 2011) (quoting In re Cuyahoga Equip. Corp., 980 F.2d 110, 114 (2d Cir. 1992)).

"Conceivable effects" typically manifest themselves by altering "[t]he amount of property available for distribution to the creditors of a bankruptcy estate or the allocation of property among such creditors." In re Kolinsky, 100 B.R. 695,

702 (S.D.N.Y. 1989), cited in Am. Int'l Specialty Lines Ins. Co. v. Towers Fin. Corp., 198 B.R. 55, 61 (S.D.N.Y. 1996). A single bankruptcy being affected in this way is sufficient to support "related to" jurisdiction.[3] See, e.g., City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc., 572 F. Supp. 2d 314 (E.D.N.Y. 2008) (finding "related to" jurisdiction based on one originator's bankruptcy when the underlying complaint made allegations against five originators).

Contingent outcomes can satisfy the "conceivable effects" test. The outcome need not be certain; the possibility of an effect is sufficient. See Parmalat, 639 F.3d at 579 (concluding that the test was satisfied because a possible outcome of the underlying action would augment a bankruptcy estate); see also generally Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) ("The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy."").

Yet "related to" jurisdiction is still cabined. Indeed, the Supreme Court has admonished that "a bankruptcy court's 'related

---

[3] Plaintiffs' emphasis on the insignificance of the size of the loans whose genesis is the Bankrupt Originators relative to the total value of the securitizations that form the basis of the underlying proceeding is thus misplaced. The loans' relationship to the primary action is not before the Court. Rather, our focus is their relationship to the bankruptcies. See Allstate Ins. Co. v. Ace Sec. Corp., No. 11 Civ. 1914, 2011 U.S. Dist. LEXIS 91989, at *18 (S.D.N.Y. Aug. 16, 2011).

to' jurisdiction cannot be limitless." <u>Celotex Corp. v. Edwards</u>, 514 U.S. 300, 308 (1995); <u>see also</u> <u>In re Turner</u>, 724 F.2d 338, 341 (2d Cir. 1983) (". . . Congress must have intended to put some limit on the scope of 'related to' jurisdiction."). Thus, any contingencies cannot be too far removed; too many links in the chain of causation before the bankruptcy estate is affected may preclude "related to" jurisdiction. <u>See</u> <u>Pacor</u>, 743 F.2d at 995 (finding that, absent an "automatic creation of liability" against the bankrupt, the underlying action was too far removed from the bankruptcy to be related).

### B.    Defendants' Indemnification Agreements Are Relevant to "Related To" Jurisdiction

Defendants have contractual rights to indemnification from each of the Bankrupt Originators. (<u>See</u> Decl. of Katherine D. Janson ("Janson Decl."), Ex. D, Purchase, Warranties and Interim Servicing Agreement with Finance America ("Finance America Purchase Agreement") 57 (Dec. 1, 2003); <u>id.</u>, Ex. E, Purchase, Warranties and Interim Servicing Agreement with New Century ("New Century Purchase Agreement") 61 (July 1, 2005); <u>id.</u>, Ex. G, Indemnification and Contribution Agreement with TBW ("TBW Indemnification Agreement") 4-5 (Aug. 29, 2006).) Facially, these agreements cover liability defendants may face as a result of this action. (<u>See, e.g.</u>, Finance America Purchase Agreement 30 ("All information supplied by, on behalf of, or concerning

the Mortgagor is true, accurate and complete and does not contain any statement that is or will be inaccurate or misleading in any material respect[.]"); New Century Purchase Agreement 33 (same); TBW Indemnification Agreement 4 (providing indemnification for "any untrue statement or alleged untrue statement of any material fact contained in the Prospectus Supplement [or any amendments thereto], or aris[ing] out of or . . . based upon the omission or alleged omission to state therein a material fact required to be stated therein").

Plaintiffs do not challenge the validity of these agreements or assert that they are otherwise inoperable. Rather, they argue that the likelihood that the indemnification agreements will be implicated by their suit against defendants is too remote to be the basis of withdrawal. Specifically, they contend that defendants will only have claims against the bankruptcy estates if the defendants are found liable in the underlying action. Plaintiffs bolster this argument with the suggestion that they may prove defendants' liability without ever implicating a false or misleading statement made by the Bankrupt Originators.

These contentions do not by themselves defeat "related to" jurisdiction. An outcome's contingency does not preclude it from having a "conceivable effect" on a bankruptcy proceeding. See Parmalat, 639 F.3d at 579. The Bankrupt Originators' possible

indemnification obligation should the defendants lose the underlying action is a potentiality that has previously been found to constitute a "conceivable effect."[4] See, e.g., Five Mile Capital II SPE ESH LLC v. Cerberus Capital Mgmt. (In re Extended Stay Inc.), 435 B.R. 139, 150 (S.D.N.Y. 2010); Abbatiello v. Monsanto Co., No. 06 Civ. 266, 2007 U.S. Dist. LEXIS 19790, at *13-14 (S.D.N.Y. Mar. 5, 2007).

### C. Defendants Have Not Asserted Claims for Indemnification of the Underlying Action Against the Bankrupt Originators

However, the potential applicability of indemnification provisions is not by itself the equivalent of an effect on an indemnifier's bankruptcy proceedings. The only way defendants' indemnification claims against the Bankrupt Originators can actually affect the allocation of property among the estates' creditors is if defendants have asserted their claims against the bankruptcy estates. See Fed. R. Bankr. P. 3002(a) ("An unsecured creditor . . . must file a proof of claim or interest for the claim or interest to be allowed . . . ."). Although defendants did file proofs of claim in the New Century and TBW bankruptcies, those claims did not pertain to the indemnification to which defendants now claim they are entitled. To date, no proofs of claim asserting defendants'

---

[4] To the extent defendants can utilize the provisions of their indemnification agreements to claim legal fees associated with defending this action, the outcome itself may in fact be irrelevant.

indemnification rights against any of the Bankrupt Originators relating to the underlying action have been brought to the Court's attention.[5]

Defendants cannot remedy this defect in their removal by filing the necessary proofs of claim now. In order to "provid[e] the debtor and its creditors with finality," the bankruptcy court must establish a bar date beyond which no further proofs of claim will be accepted. In re Enron Creditors Recovery Corp., 370 B.R. 90, 94 (Bankr. S.D.N.Y. 2007); see also Fed. R. Bankr. P. 3003(c)(3). The bar date has passed in each of the relevant bankruptcies. See Order Establishing the Deadline for Proofs of Claim, In re Lehman Bros. Holdings Inc., No. 08-13555, docket no. 4271, at 2 (Bankr. S.D.N.Y. July 2, 2009) (bar date of September 22, 2009);[6] Order Establishing Bar Dates for Filing Proofs of Claim, In re New Century TRS Holdings Inc., No. 07-10416, docket no. 1721, at 3 (Bankr D. Del. June 28, 2007) (bar date of August 31, 2007); Order Establishing Deadline for Filing Proofs of Claim, In re Taylor, Bean & Whitaker Mortgage Corp. ("TBW"), No. 09-bk-7047, docket no. 1067, at 2 (Bankr. M.D. Fla. Feb. 22, 2010) (bar date of June 15, 2010).

---

[5] Defendants' failure to file any proofs of claim for potential indemnification differentiates this case from those they cite. See, e.g., Lone Star Fund V (US) v. Barclays Bank PLC, 594 F.3d 383, 386 n.2 (5th Cir. 2010); Stichting Pensioenfonds ABP v. Countrywide Fin. Corp., 447 B.R. 302, 307 (C.D. Cal. 2010); Ann Arbor, 572 F. Supp. 2d at 318-19.

[6] BNC's liquidation is being jointly administered with that of Lehman Brothers Holdings Inc.

To avoid the bar dates, defendants argue that, because plaintiffs did not bring the underlying action until after the bar dates had passed, their failure to assert indemnification claims is excusable under Federal Rule of Bankruptcy Procedure 9006(b)(1), which permits a court to allow a time-barred act "where the failure to act was the result of excusable neglect." To the contrary, defendants cannot rely on this rule to overcome the passage of the bar dates. An indemnification right "arises at the time the indemnification agreement is executed," and it constitutes a claim under the Bankruptcy Code even if the act giving rise to indemnification has not yet occurred. Olin Corp. v. Riverwood Int'l Corp. (In re Manville Forest Prods. Corp.), 209 F.3d 125, 128-29 (2d Cir. 2000); see also 11 U.S.C. § 101(5)(A) (defining a "claim" as a "right to payment, whether or not such right is . . . fixed [or] contingent"). As a result, defendants could, and should, have asserted their indemnification claims prior to the bar dates. See P.A. Props., Inc. v. B.S. Moss' Criterion Ctr. Corp., No. 02 Civ. 4900, 2004 U.S. Dist. LEXIS 25623, at *37-38 (S.D.N.Y. Dec. 23, 2004) (holding that, because indemnity agreements create contingent rights to payment upon their execution, claims based on such agreements must be asserted prior to the bar date).

More importantly, defendants have not pointed to any court that has excused their failure to file proofs of claim for

indemnification. Nor is it appropriate for a court to speculate on the viability of any such future attempt to have those failures excused. See Allstate Ins. Co. v. Merrill Lynch & Co., No. 11 Civ. 2280, slip op. at 9 (S.D.N.Y. Aug. 15, 2011). Moreover, the very necessity of that litigation suggests that the current action is too far removed to be jurisdictionally "related to" the bankruptcies. Cf. Pacor, 743 F.2d at 995-96 (denying "related to" jurisdiction because a separate legal action would need to follow the primary action in order to have an effect on the bankruptcy).

Defendants' attempt to circumvent the need to appeal to "excusable negligence" at all by pointing to the claims they filed in the New Century and TBW bankruptcies prior to the bar dates' passage is equally flawed. Neither claim specified or quantified indemnification rights pertinent to the underlying action, although each reserved the right to amend the claim. See Janson Decl., Ex. H, Proof of Claim 3585, In re New Century Mortgage Corp., No. 07-10419, at 4, 6 (Bankr. D. Del. Oct. 17, 2007) (". . . DLJ reserves the right to amend this Proof of Claim to seek indemnity from the Debtor for any further or additional indemnity claims . . . at any time, including after any bar date . . . ."); Decl. of Stieg D. Olson, Ex. R, Proof of Claim 2576, TBW, No. 09-bk-7047, at 2 (June 11, 2010) (". . .

DLJ reserves the right to amend this claim to assert claims for . . . indemnity obligations . . . .").

While a claim may be amended after the bar date, see Fed. R. Bankr. P. 7015 (making applicable Federal Rule of Civil Procedure 15, which governs amendments to pleadings in adversary proceedings), this option is only available if the amendment "(1) corrects a defect of form in the original claim; (2) describes the original claim with greater particularity; or (3) pleads a new theory of recovery on the facts set forth in the original claim." Midland Cogeneration Venture Ltd. Partnership v. Enron Corp. (In re Enron Corp.), 419 F.3d 115, 133 (2d Cir. 2005) (internal quotation marks omitted). None of these avenues for permissible amendment appears to be available here since these indemnification rights were not foreshadowed in either proof of claim such that "those involved in the proceeding [were] made aware of the claims against the debtor's estate and [had] an opportunity to contest those claims." In re Chateaugay Corp., 94 F.3d 772, 777 (2d Cir. 1996) (internal quotation marks omitted). Thus, the amendments would seek to assert new claims, which is not permissible.[7]

---

[7] The New Century claim is an exceptionally weak candidate for amendment for two additional reasons. First, the New Century plan has already been confirmed, and "federal jurisdiction shrinks post-confirmation." Krys v. Sugrue, No. 08 Civ. 3065, 2008 U.S. Dist LEXIS 86149, at *20 (S.D.N.Y. Oct. 23, 2008); see also, e.g., In re Winn-Dixie Stores, Inc., 639 F.3d 1053, 1056-57 (11th Cir. 2011) ("[P]ost-confirmation amendment -- while not prohibited -- is not favored, and only the most compelling circumstances

Moreover, the dispute about the possibility of amending the claims suggests that the underlying action is too far removed from the bankruptcy proceedings to be related to them. Cf. Pacor, 743 F.2d at 995-96. To the extent we have any doubts about removability, they must be resolved in plaintiffs' favor. See In re MTBE Prods. Liab. Litig., 488 F.3d at 124.

Defendants have thus failed to establish that the underlying action is sufficiently "related to" any bankruptcy proceedings to justify this Court taking jurisdiction, and the action should be remanded to state court.

### III. Mandatory Abstention Under 28 U.S.C. § 1334(c)(2)

Even had defendants shown that the underlying action was "related to" the Bankrupt Originators' bankruptcies, the Court would be obligated to remand the action to the state court. Section 1334(c)(2) of Title 28 provides that a district court "shall abstain" from hearing a removed action when six elements are present: (1) the motion to abstain was timely, (2) the action is based on state law claims, (3) the sole basis for federal jurisdiction is 28 U.S.C § 1334, (4) that jurisdiction is based on neither the "arising in" nor the "arising under" clauses of Section 1334(b), (5) an action is commenced in state

---

justify it."). Second, defendants settled the claim in the New Century proceeding. The parties disagree about the scope and import of the settlement, but all disputed questions of fact must be construed in favor of the plaintiff, see NASDAQ, 929 F. Supp. at 178, suggesting that there remains no claim to amend.

court, and (6) that action can be "timely adjudicated" in state court. See In re Fairfield Sentry Ltd., No. 11 MC 224, 2011 U.S. Dist. LEXIS 106275, at *59-60 (S.D.N.Y. Sept. 19, 2011).

The first five elements are not in contest. The parties have instead focused their energies on the sixth element, whether the New York State Supreme Court's Commercial Division (the "Commercial Division") will be able to adjudicate the dispute in a timely fashion. The Second Circuit has identified four factors that are pertinent to this evaluation:

> (1) the backlog of the state court's calendar relative to the federal court's calendar; (2) the complexity of the issues presented and the respective expertise of each forum; (3) the status of the title 11 bankruptcy proceeding to which the state law claims are related; and (4) whether the state court proceeding would prolong the administration or liquidation of the estate.

Parmalat, 639 F.3d at 580. Although the question is "informed by the comparative speeds of adjudication in the federal and state forums," it is not simply a matter of "whether an action could be adjudicated most quickly in state court." Id. Thus, a state court may be a "timely" forum, even if it requires longer to adjudicate an action than a federal court, as long as the relevant bankruptcy proceedings will not be hindered by the relative delay.

The first two factors for assessing timeliness require consideration of "the particular factual and procedural

circumstances presented in the two courts being compared." Id. For that reason, plaintiffs' appeal to the "presum[ption] that a state court will operate efficiently and effectively," id. at 582, a legal conclusion, is misplaced. We must consider actual evidence.

The evidence advanced by the parties pertinent to the first factor does not persuade the Court that the backlog of cases is significantly different in this district than in the Commercial Division. Plaintiffs' comparison of the number of cases per judge in this district to the same statistic in the Commercial Division is faulty because, among other reasons, it gives equal weight to related cases and standalone cases. Defendants' assertion that the Commercial Division raising its monetary threshold for cases will not offset the influx of suits resulting from the economic crisis does not speak to the relative speed of the two forums. With no persuasive evidence on the issue in front of us, we cannot presume one court's backlog is more manageable than the other's.

The relative expertise of the courts also does not tip the balance in favor of either forum. Because the action was removed within a month of the filing of the complaint, the state court had no occasion to develop familiarity with the facts. This Court, likewise, has minimal familiarity with the facts of the underlying action.

With respect to the courts' relative legal expertise, neither demonstrates an advantage. While this district has seen its share of residential mortgage-backed securities cases, so has the Commercial Division. _See, e.g._, MBIA Ins. Co. v. GMAC Mortg., LLC, No. 600837/2010 (N.Y. Sup. Ct. Apr. 1, 2010); Ambac Assurance Corp. v. Credit Suisse Sec., No. 600070/2010 (N.Y. Sup. Ct. Jan. 12, 2010); MBIA Ins. Co. v. Res. Funding Co., LLC, No. 603552/2008 (N.Y. Sup. Ct. Dec. 4, 2008). Defendants' attempt to characterize these cases as being breach of contract cases rather than fraud cases is unpersuasive. Indeed, "[t]hese cases raise the same claims of fraud and negligent misrepresentation alleged here . . . ." Ace Sec. Corp., 2011 U.S. Dist. LEXIS 91989, at *32-33. Moreover, the cases before the Commercial Division are comparably sized to the underlying action, and some deal with even more loans than the 42,428 at issue here. _See, e.g._, MBIA Ins. Co. v. Countrywide Home Loans, Inc., No. 602825/2008 (N.Y. Sup. Ct. Aug. 24, 2009) (alleging fraud in connection with fifteen offerings, each backed by 8,000 to 48,000 loans). If anything, because the underlying action alleges only state claims, the Commercial Division may have an edge in the relevant legal expertise. Cf. Ace Sec. Corp., 2011 U.S. Dist. LEXIS 91989, at *33 ("While federal district courts naturally possess expertise in applying federal law, this

advantage dissipates for cases alleging exclusively state claims.").

Because the Commercial Division and this district appear equally able to adjudicate the underlying action, we need not address the remaining two factors, which are relevant only if the first two factors suggest that the federal district court would be the timelier forum. With no foreseeable significant difference in the comparative speeds of adjudication of this Court and the Commercial Division, the "timely adjudication" element of mandatory abstention is established. Cf. Fairfield Sentry, 2011 U.S. Dist. LEXIS 106275, at *62 (suggesting that the burden lies with the removing party); Ace Sec. Corp., 2011 U.S. Dist. LEXIS 91989, at *22-23 (same). Thus, even if this Court had jurisdiction over the underlying action, we must abstain from exercising it.

### III. Payment of Costs and Expenses Under 28 U.S.C. § 1447(c)

Plaintiffs request the Court to order defendants to pay the costs and expenses incurred by the removal of this action from state court, which the Court is permitted to do by 28 U.S.C. § 1447(c). Such an award, however, is appropriate "only where the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Capital Corp., 546 U.S. 132, 141 (2005). In practice, if "lack of jurisdiction was not

obvious from the face of the removal petition" and no other unusual circumstances obtain, a court cannot conclude that an objectively reasonable basis was lacking. Albstein v. Six Flags Entm't Corp., No. 10 Civ. 5840, 2010 U.S. Dist. LEXIS 118116, at *11 (S.D.N.Y. Nov. 4, 2010); accord Sherman v. A.J. Pegno Constr. Corp., 528 F. Supp. 2d 320, 331 (S.D.N.Y. 2007).

While, for the reasons set out in this opinion, the removal petition was not likely to succeed, we cannot conclude that the effort was so objectively unreasonable as to support an award of attorney's fees. Accordingly, the Court denies plaintiffs' request for costs and expenses.

## CONCLUSION

For the foregoing reasons, plaintiffs' motion to remand the action to state court is granted.

Dated:   New York, New York
         October 19, 2011

NAOMI REICE BUCHWALD
UNITED STATES DISTRICT JUDGE


Copies of the foregoing Order have been mailed on this date to the following:

**Attorneys for Plaintiff**
Daniel L. Brockett
David D. Burnett
Steig D. Olson
Quinn Emanuel Urquhart & Sullivan, LLP
51 Madison Avenue, 22nd Floor
New York, NY 10010

**Attorney for Defendant**
Richard W. Clary
Michael T. Reynolds
Cravath, Swaine & Moore, LLP
Worldwide Plaza
825 Eighth Avenue
New York, NY 10019